## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

MARÍA GARCÍA-AGUIRRE and MOISES
CADENA-GONZÁLEZ,

                    Plaintiffs,

       *v.*

MOHANNA HARFOUCHE and SUPREME
BAGELS & COFFEE, INC. d/b/a BAGEL
SUPREME,

                Defendants.

**COMPLAINT**

Case No.: 1:22-cv-6882

The Plaintiffs, by their attorneys Catholic Migration Services and Kakalec Law PLLC, state and allege as follows:

<u>Preliminary Statement</u>

1. For over 28 years between them, Plaintiffs María García-Aguirre and Moises Cadena-González ("Plaintiffs") worked long hours—as many as 68 hours per week—at Bagel Supreme in Brooklyn, New York. Plaintiffs attended to customers, handled food, worked the cash register, and cleaned the bagel store.

2. Notwithstanding these long hours and hard work, Defendants Supreme Bagels & Coffee, Inc. d/b/a Bagel Supreme and Mohanna Harfouche (collectively, "Defendants") paid Plaintiffs illegally low wages, no overtime premiums, and no spread of hours pay. Year-after-year, in willful and systematic violation of federal and New York laws even as Plaintiff García-Aguirre repeatedly asked to be paid higher wages, Defendants paid Plaintiffs a flat hourly rate for all hours worked, which constituted a subminimum wage.

3.  In response to Ms. García-Aguirre's final request to be paid the legal minimum wage and overtime, Ms. García-Aguirre was terminated in retaliation for attempting to assert her rights under state and federal law.

4.  To remedy these and other legal violations, Plaintiffs bring this action to recover damages for Defendants' violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") arising out of Plaintiffs' employment at Bagel Supreme, located at 9401 5th Avenue, Brooklyn, NY 11209 ("Bagel Supreme"). Plaintiffs seek, *inter alia*, their unpaid wages, liquidated damages, retaliation damages, and damages for other violations of New York Labor Law.

## JURISDICTION AND VENUE

5.  This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.  This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. Plaintiffs' state law claims are part of the same case or controversy as Plaintiffs' federal claims.

7.  Venue is proper in this District pursuant to 28 U.S.C. § 1391, because a substantial part of the acts and/or omissions giving rise to the claims alleged in the Complaint occurred in this District.

8.  Defendants do business in this district.

## THE PARTIES

### Plaintiffs

9.   At all times relevant to this action, Plaintiffs were employed by Supreme Bagels & Coffee, Inc. ("Bagel Supreme"). Their worksite was Bagel Supreme's location at 9401 5th Ave, Brooklyn, NY 11209.

10.   Plaintiff María García-Aguirre ("Ms. Garcia-Aguirre") worked at Bagel Supreme from approximately 2001 to July 26, 2022.

11.   Plaintiff Moises Cadena-González ("Mr. Cadena-González") worked at Bagel Supreme from approximately 2014 to March 20, 2022.

12.   At all times relevant to this action, Plaintiffs were employees of Defendants within the meaning of the FLSA and NYLL.

13.   At all times relevant to this action, Plaintiffs were non-exempt employees for purposes of being paid the legal overtime premium pursuant to the FLSA and NYLL.

14.   Initially, Ms. García-Aguirre's primary job duties were to clean the restaurant. Thereafter, and for the majority of her employment at Bagel Supreme, her primary duties were to serve customers at the deli counter.

15.   Throughout most or all of his employment at Bagel Supreme, Mr. Cadena-González's primary job duties were to clean the restaurant. He also attended to customers at the deli counter. At the end of his tenure, his primary tasks were primarily cleaning-related.

16.   At all times throughout their employment, Plaintiffs were employees engaged in commerce and/or in the production of goods for commerce, within the meaning of 29 U.S.C. §§ 206(a) and 207(a), insofar as they regularly handled and worked on items from out of state that were being prepared for sale and offered for sale in New York, such as meat, eggs,

vegetables, cheese, flour, juices, sodas, water, and other food items; and insofar as Plaintiffs regularly used tools and materials in their cleaning and food-service work that originated out of state, such as paper bags, paper for sandwiches, mops, cleaning chemicals, and more.

17. The primary and native language of both Plaintiffs is Spanish.

18. Plaintiffs consent in writing to becoming parties in this action. True and correct copies of Plaintiffs' FLSA consent forms are attached hereto as Exhibit A.

**Defendants**

Supreme Bagels & Coffee, Inc.

19. Defendant Supreme Bagels & Coffee, Inc., is a corporation organized under the laws of the State of New York with a principal office located at 9401 5th Avenue, Brooklyn, NY 11209.

20. Supreme Bagels & Coffee, Inc. was incorporated on or about March 23, 2010.

21. In all relevant periods, Supreme Bagels & Coffee, Inc., operated a bagel shop at 9401 5th Avenue, Brooklyn, NY.

22. Supreme Bagels & Coffee, Inc. operates as part of an integrated enterprise doing business as Bagel Supreme, with seven current locations of bagel shops.

23. According to its website, bagelsupreme.com, Bagel Supreme will open five additional locations "soon."

24. Upon information and belief, at all times that Plaintiffs worked for Bagel Supreme, Defendant Supreme Bagels & Coffee, Inc. was an enterprise engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 203, in that it:

   a. had employees engaged in commerce or in the production of goods for commerce, or who handled, sold, or otherwise worked on goods or materials that were moved in or produced for commerce by any person; and

b. had an annual gross volume of sales made or business done of not less than $500,000.

25. At all times in which Plaintiffs worked for Bagel Supreme, Supreme Bagels & Coffee, Inc. was Plaintiffs' "employer" within the meaning of the Fair Labor Standards Act and the New York Labor Law.

Mohanna Harfouche

26. Upon information and belief, Defendant Mohanna Harfouche was the majority or sole owner of Bagel Supreme from approximately 2016 through July 2022.

27. Upon information and belief, during the time that Plaintiffs worked for Bagel Supreme, Defendant Mohanna Harfouche hired employees.

28. Upon information and belief, throughout the time that Plaintiffs worked for Bagel Supreme, Mohanna Harfouche had the authority to hire and fire employees, establish employee schedules, maintain employment records, determine rates of pay, and assign work responsibilities.

29. At all times Plaintiffs worked for Bagel Supreme, Defendant Mohanna Harfouche was Plaintiffs' "employer" within the meaning of the Fair Labor Standards Act and the New York Labor Law.

Bagel Supreme Managers

30. Throughout the course of their employment at Bagel Supreme, Plaintiffs were managed by different managers, who included individuals named Sam, Frajim (spelling unsure), Akshara (spelling unsure), Mohammed aka Carlos, Gustavo, and Fernanda (collectively "Bagel Supreme Managers").

31. Each week during the relevant period, the Bagel Supreme Manager employed at that time recorded the hours worked by Plaintiffs and other workers. They recorded these hours in a notebook kept in the safe at Plaintiffs' worksite.

32. Each week during the relevant period, Bagel Supreme Managers asked Plaintiffs how many hours they worked each week and then recorded those hours in the notebook.

33. Bagel Supreme Managers then paid Plaintiffs cash according to the hours recorded.

## FACTUAL ALLEGATIONS

### Working Conditions

34. Plaintiff María García-Aguirre began working for Bagel Supreme in 2001 and continued until she was terminated on or about July 26, 2022.

35. From 2016 through approximately April 2022, Ms. García-Aguirre worked six days per week from approximately 5 AM to 3 PM each day, for a total of 60 hours per week. Ms. García-Aguirre usually did not work on Wednesdays. This was her normal schedule throughout this time period, and she worked approximately 60 hours per week every week or almost every week throughout this time period.

36. From approximately May 2022 through her final day of employment at Bagel Supreme, Ms. García-Aguirre worked six days per week for a total of 42 hours per week. On Mondays, Ms. García-Aguirre worked approximately 5 AM to 5 PM. On Tuesdays, Thursdays, Fridays, and Sundays, she worked approximately 5 AM to 11 AM. This was her normal schedule throughout this time period, and she worked approximately 36 hours per week every week or almost every week throughout this time period.

37. At no time during the relevant period did Ms. García-Aguirre receive a lunch break of at least thirty (30) minutes in which she was relieved of her duties.

6

38. From November 2016 through approximately January 2020, Bagel Supreme paid Ms. García-Aguirre $10 per hour for all the hours she worked.

39. From approximately January 2020 to approximately June 2020, Bagel Supreme paid Ms. García-Aguirre $12 per hour for all the hours she worked.

40. From approximately June 2020 to approximately September 2021, Bagel Supreme paid Ms. García-Aguirre $12.50 per hour for all the hours she worked.

41. From approximately September 2021 through the last day of her employment, Bagel Supreme paid Ms. García-Aguirre $13.50 per hour for all the hours she worked.

42. From December 31, 2016 through the day of her termination, Defendants did not pay Ms. García-Aguirre the New York minimum wage.

43. Throughout her employment, Defendants never paid Ms. García-Aguirre an overtime premium for hours worked above forty in a workweek.

44. For example, for the week consisting of May 2 through May 8, 2022, Ms. García-Aguirre worked the following schedule, for a total of 55 hours:

    a. Monday 5 AM to 5 PM;

    b. Tuesday 5 AM to 11 AM;

    c. Wednesday 5 AM to 10 AM;

    d. Thursday 5 AM to 3 PM;

    e. Friday 5 AM to 12 PM;

    f. Saturday 5 AM to 1 PM; and

    g. Sunday 5 AM to 12 PM.

45. For the above week, Ms. García-Aguirre was paid $742.50, or $13.50 for each hour she worked.

46. For the days in which Ms. García-Aguirre worked 10 hours or more, Defendants never paid Ms. García-Aguirre the spread-of-hours premium required by 12 N.Y.C.R.R. § 146-1.6.

47. Ms. García-Aguirre was fired by Bagel Supreme Manager Sam for asking to for a pay increase to raise her subminimum wage pay.

48. On or about Monday, July 25, 2022, in response to her request for a pay increase to raise her subminimum wage, Sam told Ms. García-Aguirre that Bagel Supreme would not raise her pay from its current subminimum rate of $13.50 per hour.

49. When Ms. García-Aguirre continued to press him, Sam told her that that day would be her last, and terminated her employment. Sam instructed her to give back the keys to the shop, with which she had opened the store in the mornings on the six days she worked each week.

50. Plaintiff Moises Cadena-González began working for Bagel Supreme in 2014.

51. Mr. Cadena-González's employment at Bagel Supreme ended on approximately March 20, 2022, when Defendants told him that there was no longer any work for him at the bagel shop.

52. Throughout the entirety of his employment, Defendants paid Mr. Cadena-González $10 per hour, a number far below the New York state minimum wage for the majority of his employment.

53. Similarly, Defendants never paid Mr. Cadena-González an overtime premium for hours worked above forty in a workweek.

54. At no time during the relevant period did Mr. Cadena-González receive a lunch break of at least thirty (30) minutes in which he was relieved of his duties.

55. From 2014 through March 2019, Mr. Cadena-González generally worked the following schedule:

a. On Fridays and Saturdays, Mr. Cadena-González entered at 3 PM and left the following day at 5 AM, a shift of 14 hours each day.

b. From Sunday afternoon through Thursday, Mr. Cadena-González worked 3 PM through 11 PM.

c. This was Mr. Cadena-González's normal schedule throughout this time period, and he worked approximately 68 hours per week every week or almost every week throughout this time period.

56. For the days in which Mr. Cadena-González worked 10 hours or more, Defendants never paid Mr. Cadena-González the spread-of-hours premium required by 12 N.Y.C.R.R. § 146-1.6.

57. From March 2019 through approximately March 20, 2022, Mr. Cadena-González worked approximately three hours per day, seven days per week, from 3 PM to 6 PM each day. Mr. Cadena-González was only paid for two of these hours each day. In other words, Mr. Cadena-González was not paid *at all* for seven of his twenty-one hours of work each week, i.e., for one-third of his hours worked in this period.

58. In this last period of Mr. Cadena-González's employment, from 2019 through approximately March 20, 2022, Defendants told Mr. Cadena-González that they would not pay him for all hours worked and that instead, he simply needed to work faster.

59. For example, in the week of February 7 through February 13, 2022, Mr. Cadena-González worked all seven days from 3 PM to 6 PM. He was paid $140 for these 21 hours worked.

60. As a result of Defendants' failure to pay Mr. Cadena-González for one-third of his hours, Defendants paid Mr. Cadena-González an effective hourly wage of approximately $6.66 for this entire period, below the federal minimum wage of $7.25 per hour.

61. Defendants never provided Plaintiffs with any written notice, at the time of payment or afterward, that explained the number of hours worked, gross wages, any deductions, and other information as required under NYLL § 195(3).

62. Defendants failed to provide to Plaintiffs at the time of hire or anytime thereafter, in writing in English and in Plaintiffs' primary language, notices required by NYLL § 195(1)(a) containing the rate or rates of pay and basis thereof; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer.

### Joint Enterprise: Bagel Supreme Locations in NY and NJ

63. During Plaintiffs' employment, the following bagel stores throughout New York and New Jersey were under common control and were operated for a common business purpose:[1]

   a. Bagel Supreme, 35 Westfield Ave, Clark, NJ, 07066;

   b. Bagel Supreme, 529 Inman Ave, Colonia, NJ 07067;

   c. Bagel Supreme, 284 Park Ave, Rutherford, NJ 07070;

   d. Bagel Supreme, 1045 Raritan Rd, Clark, NJ 07066;

   e. Bagel Supreme, 700 Boulevard, Kenilworth, NJ 07033;

   f. Bagel Supreme, 9401 5th Ave, Brooklyn, NY 11209; and

   g. Bagel Supreme, 669 Raritan Road, Cranford, NJ 07016.

---

[1] As of filing, 5 additional locations are "coming soon" per www.bagelsupreme.com.

64. During Plaintiffs' employment, operations were integrated among Bagel Supreme locations. The seven locations share a common name and are located geographically proximate in the greater New York City region.

65. Bagel Supreme locations were under common control. Bagel Supreme Managers oversaw operations of multiple bagel shops, including the Bagel Supreme at which Plaintiffs worked. Among other tasks, Bagel Supreme Managers coordinated product distribution among stores, gave directions to cooks and on-site managers, paid employees, and made personnel decisions in multiple locations.

66. For example, Bagel Supreme Managers Akshara and Sam, who managed multiple Bagel Supreme stores, including the Brooklyn location, brought products to the Brooklyn Bagel Supreme from New Jersey each week, typically on Thursdays. In advance of their delivery, these Managers would call the Brooklyn Bagel Supreme, so that the staff would be ready to receive the products.

67. Bagel Supreme Managers delivered to the Brooklyn location products from other Bagel Supreme locations in New Jersey, including meat, eggs, vegetables, cheese, flour, juices, sodas, water, and other food items.

68. Bagel Supreme employee Catalino, who was in charge of food preparation at the Brooklyn Bagel Supreme location, called Akshara or Sam in New Jersey to tell them how much of each product that location needed in each given week.

69. Similarly, if Catalino determined that the store was low on a product during a given week, he would call Akshara or another Bagel Supreme Manager in New Jersey to ask that more product be delivered from New Jersey.

70. If another store was low on a product in a given week, like ham or cheese, a Bagel Supreme Manager would call the Brooklyn Bagel Supreme and request that these products be delivered to the other store.

71. When replacement machines like stoves were installed at the Brooklyn Bagel Supreme location, Bagel Supreme employee Luis came to bring the machines. Upon information and belief, Luis was employed by Bagel Supreme in another location.

72. Upon information and belief, food products and other supplies were shared among Bagel Supreme locations. For example, vegetables like tomatoes and celery arrived loose in an unmarked box with no label to the Brooklyn Bagel Supreme.

73. For all times relevant to this action, Defendants have constituted a single enterprise engaged in commerce and, in operating their business, have performed related activities through unified operation or common control for a common business purpose.

## Further Allegations

74. Defendants: (1) shared the services of the Plaintiffs; (2) shared direct or indirect control over Plaintiffs; (3) acted in the interest of one another; and (4) constitute joint employers of Plaintiffs as defined by federal and state law.

75. Defendants undertook all of the actions and omissions alleged above either directly or through their agents who were authorized to undertake such actions and omissions.

76. Defendants were aware that their employment practices toward Plaintiffs were in violation of the FLSA and the NYLL, yet Defendants continued to pay the Plaintiffs unlawfully low wages.

77. Defendants terminated Ms. García-Aguirre when she asked for a salary increase from the subminimum wage she knew she was being paid.

78. The actions and omissions alleged in this Complaint were willful.

## FIRST CAUSE OF ACTION
### Failure to Pay Overtime Wages Under the Fair Labor Standards Act
### (as to Plaintiff García-Aguirre)

79. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

80. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the FLSA, 29 U.S.C. § 203.

81. Throughout the entirety of their employment, Defendants failed to pay Plaintiff Garcia-Aguirre overtime wages at rates at least one-and-a-half times her regular rate of pay in violation of 29 U.S.C. § 207.

82. Defendants' failure to pay Plaintiff Garcia-Aguirre her lawful overtime wages was willful.

83. Due to Defendants' FLSA overtime violation, Plaintiff García-Aguirre is entitled to recover from Defendants, jointly and severally, her unpaid overtime wages for the period from November 10, 2019 through the end of her employment, and an equal amount as liquidated damages, as well as interest, reasonable attorneys' fees, and costs of the action, pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### Failure to Pay Minimum Wages Under the Fair Labor Standards Act
### (as to Plaintiff Cadena-González)

84. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

85. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the FLSA, 29 U.S.C. § 203.

86. From March 2019 through the end of Plaintiff Cadena-González's employment, Defendants failed to pay Plaintiff Cadena-González for all his hours worked, and thus paid Plaintiff Cadena-González an effective hourly wage below the federal minimum wage, in violation of 29 U.S.C. § 206.

87. Defendants' failure to pay Plaintiff Cadena-González above the federal minimum wage was willful.

88. Due to Defendants' FLSA minimum wage violations, Plaintiff Cadena-González is entitled to recover from Defendants, jointly and severally, his unpaid minimum wages for the period from November 10, 2019 through the end of Plaintiff Cadena-González's employment, and an equal amount as liquidated damages, as well as interest, reasonable attorneys' fees, and costs of the action, pursuant to 29 U.S.C. § 216(b).

### THIRD CAUSE OF ACTION
**Failure to Pay Minimum Wages Under the New York Labor Law**
**(as to both Plaintiffs)**

89. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

90. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the NYLL, including but not limited to NYLL §§ 2 and 651.

91. During Plaintiffs' employment at Bagel Supreme from December 31, 2016 through 2022, Defendants failed to pay Plaintiffs at the applicable legal minimum hourly wage for every hour worked, in violation of NYLL § 652.

92. Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid minimum wages, an equal amount as liquidated damages, as well as reasonable attorneys' fees, costs of the action, and interest.

## FOURTH CAUSE OF ACTION
**Failure to Pay Overtime Wages Under the New York Labor Law**
**(as to both Plaintiffs)**

93.  Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

94.  At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the NYLL, including but not limited to NYLL §§ 2 and 651.

95.  Throughout the entirety of their employment, Defendants failed to pay Plaintiffs overtime wages at rates at least one-and-a-half times the regular rate of pay in violation of NYLL and accompanying regulations.

96.  Due to Defendants' NYLL violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, their unpaid overtime wages and an equal amount as liquidated damages, as well as interest, reasonable attorneys' fees, and costs of the action, in accordance with NYLL §§ 652 and 663.

## FIFTH CAUSE OF ACTION
**Failure to Pay Spread of Hours Under the New York Labor Law**
**(as to both Plaintiffs)**

97.  Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

98.  At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the NYLL, including but not limited to NYLL §§ 2 and 651.

99.  Plaintiffs regularly worked days in which the end of their work shift was more than ten (10) hours from the beginning of their work shift.

100. In violation of 12 N.Y.C.R.R. § 146-1.6, Defendants never paid Plaintiffs an additional hour of pay at the minimum wage rate for every day in which the interval between the beginning and the end of Plaintiffs' work day was more than ten (10) hours.

101. Plaintiffs are entitled to their unpaid spread of hour pay as mandated by NYLL, plus an additional equal amount as liquidated damages, as a consequence of Defendants' unlawful actions and omissions, in accordance with NYLL §§ 652 and 663 and accompanying regulations.

## SIXTH CAUSE OF ACTION
**Failure to Provide Notice at the Time of Hire Under the New York Labor Law
(as to both Plaintiffs)**

102. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

103. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the NYLL, including but not limited to NYLL §§ 2 and 651.

104. Defendants failed to provide Plaintiffs written notices at the time of hire in English and in the Plaintiffs' primary language with information such as rate of pay, the regular payday, and the name of the employer, among other information. Defendants' acts violated NYLL § 195(1)(a).

105. Plaintiffs are each entitled to recover from Defendants the statutory maximum of five thousand dollars for Defendants' violations of § 195(1)(a), interest, reasonable attorneys' fees, and costs of the action.

## SEVENTH CAUSE OF ACTION
### Failure to Provide Pay Statements Under the New York Labor Law
### (as to both Plaintiffs)

106. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

107. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the NYLL, including but not limited to NYLL §§ 2 and 651.

108. Through Plaintiffs' employment at Bagel Supreme, in violation of NYLL § 195(3), Defendants failed to provide Plaintiffs with written statements at the time wages were paid containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate(s) of pay and basis thereof; gross wages; deductions; allowances, if any; net wages; regular hourly rate of pay; overtime rate of pay; number of regular hours worked; and number of overtime hours worked.

109. Plaintiffs are each entitled to recover from Defendants the statutory maximum of five thousand dollars for Defendants' violations of NYLL § 195(3), interest, reasonable attorneys' fees, and costs of the action.

## EIGHTH CAUSE OF ACTION
### Illegal Retaliation Under the New York Labor Law
### (as to Plaintiff García-Aguirre)

110. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

111. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the NYLL, including but not limited to NYLL §§ 2 and 651.

112. Ms. García-Aguirre was terminated by Bagel Supreme Manager Sam for exercising her rights to be paid the minimum wage pursuant to NYLL § 652.

113. By retaliating against Ms. García-Aguirre, Defendants have violated New York Labor Law § 215.

114. Pursuant to NYLL § 215(2)(b), Plaintiff María García-Aguirre, through her attorneys, has served notice of this action on the New York State Attorney General.

115. Due to Defendants' illegal retaliation, pursuant to NYLL § 215(2), Ms. García-Aguirre is entitled to recover from Defendants compensatory damages, including lost compensation; liquidated damages; equitable relief; interest; costs of the action; and reasonable attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiffs María García-Aguirre and Moises Cadena-González respectfully request that judgment be granted:

1. Declaring that Defendants' conduct complained of herein is in violation of the federal and New York State labor laws;

2. Awarding Plaintiffs unpaid minimum wages, overtime wages, and spread of hours wages;

3. Awarding Plaintiffs liquidated damages;

4. Awarding Plaintiff García-Aguirre damages for retaliation in violation of the NYLL;

5. Awarding Plaintiffs damages due to violations of NYLL § 195 for failure to provide required notices and pay statements;

6. Awarding Plaintiffs attorneys' fees and costs;

7. Awarding Plaintiffs pre- and post-judgment interest; and

8. Awarding Plaintiffs any such further relief as may be just and proper.


DATED:          Sunnyside, New York
                November 10, 2022

Respectfully submitted,

**CATHOLIC MIGRATION
SERVICES**
Anthony Damelio (he/him)
47-01 Queens Blvd., Suite 203
Sunnyside, NY 11104
(347) 472-3500 ext. 1018 (tel.)
(347) 472-3501 (fax)
adamelio@catholicmigration.org

**KAKALEC LAW PLLC**
Patricia Kakalec (she/her)
Hugh Baran (he/him)
195 Montague Street, 14th Floor
Brooklyn, NY 11201
(212) 705-8730 (tel.)
(646) 759-1587 (fax)
patricia@kakaleclaw.com
hugh@kakaleclaw.com

*Attorneys for Plaintiffs*

19